## MARY REED & others *vs.* NATHANIEL D. WHITNEY.

It is no ground for refusing to enforce specific performance of an agreement to convey land, that the defendant, in his answer under oath, states that it is his impression, derived from interviews with the plaintiff, that the plaintiff understood that the defendant could hold the land as security for money lent by the defendant to the plaintiff.

A debt of one partnership to another cannot be set off in a suit in equity brought by the representatives of a member of one firm, who has died since the contracting of the debt, against one member of the other.

Since the Rev. Sts. *c.* 74, § 8 *& seq.*, upon the specific performance of a contract to convey land to a person since deceased, his widow is entitled to dower therein.

ACTION OF CONTRACT, praying relief in equity, under *St.* 1853, *c.* 371, to compel the specific performance of a written contract to convey land in Watertown to John Reed, since deceased intestate. The plaintiffs were Reed's widow, children and administrator.

The declaration alleged that the defendant and Reed, pursuant to an agreement in writing between them, purchased said lands on joint account, and had the conveyance made to the defendant alone, and Reed paid the defendant one half of the purchase money, and of all other costs and charges, and so fulfilled his part of said agreement, and the defendant held the lands free from all incumbrances, and Reed was entitled to a conveyance

45 *

from him of one undivided half thereof. The widow claimed dower in the land, and the administrator represented that it was needed for the payment of debts.

The answer, which was under oath, admitted the allegations of the declaration; but alleged that, after the payments made by Reed, loans of various sums were made by the firm of N. D. Whitney & Company, of which the defendant was a member, to the firm of Reed & Tuttle, of which Reed was a member; that these sums were borrowed by Reed, and had not been repaid; that the defendant and Reed were near neighbors and intimately acquainted; " that the defendant's impression, derived from said Reed in interviews with him, though general, is nevertheless very strong, that it was said Reed's understanding that the defendant could hold said lands or their proceeds as security for any loans made to said Reed; " that Reed, both before and after these loans, said to the defendant, in reference to them, that " he need have no anxiety, for that he was safe, happen what might; " and that " the defendant does not remember whether said Reed, in stating that he would be safe, spoke particularly of said lands; but at the time of such conversations the defendant had no other security."

The defendant contended that by this understanding a new trust was created in his favor, and a lien upon the land to secure the sums so borrowed; and also that he should be allowed to set off the claim of his firm upon the firm of Reed & Tuttle as a defence to this action. The case was set down for hearing on the declaration and answer.

*E. G. Loring*, for the widow.

*F. O. Watts & O. G. Peabody*, for the defendant.

BIGELOW, J. The grounds on which the defendant resists the specific performance of the contract set out in the declaration are not sustained by the facts in proof. There is no evidence of any agreement between him and the deceased, that the land purchased on joint account, the title to which was vested in defendant, should be held by him as security for any loan of money. The defendant in his answer does not allege in distinct terms that any such agreement was ever made. It certainly is

not found in the written agreements of the parties; and the statements of the defendant under oath, in the absence of any proof, either direct or circumstantial, to support them, are too vague and indefinite to form any basis for a just inference of any such verbal agreement ever having been made between the parties. It certainly would be competent, in a suit for specific performance, to prove that the written agreement signed by the defendant did not embody the whole contract between the parties concerning the land to which it related; because it would show that the literal execution of the written contract would be inequitable, and such as a court of equity would in the exercise of its judicial discretion decline to enforce, and leave the party to his remedy at law for damages. *Dwight* v. *Pomroy*, 17 Mass. 328. *Brooks* v. *Wheelock*, 11 Pick. 439. But this principle cannot be applied to the present case, because there is no satisfactory evidence that any agreement, other than that expressed in writing, was ever made between the parties, relating to the land in controversy.

Nor can the defendant avail himself in this suit of any set-off as a ground for resisting the plaintiffs' claim to a specific performance. Without dwelling on other objections to this point of defence, it is sufficient to say that a decisive answer to it is that the claims of the parties are not due in the same right, and could not have been set off in the lifetime of the plaintiffs' intestate. The contract set out in the declaration was made by the deceased with the defendant. The debt which the defendant relies on in set-off was contracted by Reed & Tuttle as copartners, with the firm of N. D. Whitney & Company; and although, under the Rev. Sts. *c.* 66, § 27, the death of Reed has severed the promise, so as to render his estate liable therefor as for his separate debt, it still remains a debt due to Whitney & Company, which cannot be set off against a claim on which Whitney alone is liable. 2 Story on Eq. § 1434. *Jackson* v. *Robinson*, 3 Mason, 145. The defendant is therefore bound to make specific performance of his contract, and to convey the estate according to the stipulations therein contained.

An interesting question remains to be considered. The widow

of the deceased is a plaintiff in this action, and claims an inter-
est in the premises to be conveyed by the defendant under a
decree of the court, by virtue of her right of dower in her hus-
band's estate. By the common law, it is perfectly well settled
that a widow is dowable only of those estates of which her
husband had the legal seisin, and that she is not entitled to
dower in estates of which he was only equitably seised or to the
beneficial interest of which he was entitled as *cestui que trust.*
The familiar rule of equity, that all the incidents of legal estates
shall attach and apply to equitable estates, does not include the
right of dower. This exception is contrary to all the analogies
of legal and equitable estates, and, if it were now open to ques-
tion, would be no longer recognized. It has been changed in
many of the states of the Union, and was abrogated in Eng-
land by *St.* 3 & 4 W. 4, *c.* 105, §§ 2, 3, 14, as to all persons
married after the 1st of January 1834.

The history of this exception is somewhat curious. It was
first recognized judicially very soon after the enactment of the
statute of uses, *St.* 27 H. 8, *c.* 10, when trust estates were sup-
posed to be in all respects similar to uses, of which, at com-
mon law, it was then well settled that a wife was not dowable.
Afterwards, as courts of equity began to apply to equitable es-
tates the incidents of legal estates, it became necessary to make
an exception of the right of dower in estates of which hus-
bands were equitably seised, because it was found that it would
disturb numerous titles throughout England; many conveyances
of equitable estates having been made by husbands entitled to
them, without the concurrence of their wives, on the supposition
that of trust estates, as well as of estates conveyed to uses, the
wives were not dowable. See *D'Arcy* v. *Blake*, 2 Sch. & Lef.
389, by Lord Redesdale. At the same time, curtesy was allowed
in estates of which the wife was equitably seised, because no
titles would be thereby disturbed, inasmuch as no conveyance
of such estates could be valid when made during coverture,
without the consent of the husband, signified by his joining
therein with his wife. The decisions of courts vacillated for
some time, but the exception of dower from the incidents of

equitable estates became at last firmly established. 1 Bright on Husb. & Wife, 355. 4 Kent Com. (6th ed.) 43. 1 Cruise Dig. tit. 6, *c.* 2, § 25. The rule, with the exception, is thus stated in 3 Atk. 687: " It must be allowed, equity follows the contracts of parties, in order to preserve their intent, by carrying it into execution, and depends on this principle, that what has been agreed to be done for a good consideration is considered as done, and holds in every case except in dower; and therefore where money is to be laid out in land, equity will make it have the property of land." Within this exception are comprehended estates which the husband, in his lifetime, agreed to purchase, but which had not been conveyed to him, the vendor in such case being deemed to hold the estate in trust for the purchaser. *Crabtree* v. *Bramble*, 3 Atk. 679. *Cunningham* v. *Moody*, 1 Ves. Sen. 176. *Fletcher* v. *Ashburner*, 1 Bro. C. C. 499.

Under our statutes relating to dower, Rev. Sts. *c.* 60, the wife is entitled to dower only as at common law in estates of which the husband was seised; with the addition of a right to dower in equities of redemption of mortgaged estates, by § 2, and in certain leasehold estates, by § 18. Strictly speaking, therefore, by the rules of law the wife of the deceased is not entitled to dower, as such, in the premises which her husband agreed to purchase.

But we think her claim can be well supported on another ground. By the Rev. Sts. *c.* 74, §§ 8–14, which relate to the specific performance of contracts in writing to convey real estate where the party bound to make the conveyance is dead, it is provided that if the person to whom the conveyance is to be made shall also die before such conveyance is made, any person who would have been entitled to the estate under him, " as heir, devisee or otherwise, in case the conveyance had been made according to the terms of the contract," may commence a suit in equity for the specific performance of the contract, " and the conveyance shall thereupon be so made as to vest the estate in the same persons who would have been so entitled to it." The clear intent of this statute was to place the power of the court, in enforcing such contract, upon the broadest principles

of equity, so that the benignant rule of treating as done that which, for a valid consideration, the parties had agreed to do, should be most liberally applied, without regard to any technical rule of law which might otherwise operate to restrain it. We cannot doubt that the right of the wife to dower in lands agreed to be purchased by the husband is within the letter as well as the spirit of the statute. If the conveyance had been made by the defendant in the lifetime of Reed, so as to vest the legal seisin of the estate in him according to the contract, the wife would clearly have been one of the persons entitled to an estate under him in the lands described in the contract, within the broad terms used in the statute, " as heir, devisee or otherwise," and to whom the conveyance would have to be made under the order of court, " so as to vest the estate in the same persons who would have been so entitled to it."

There is no reason why the rights of the widow of the party to whom the conveyance is to be made should not be the same where the other party is still living, as where specific performance of the contract is sought to be enforced against his representatives. The intention of the legislature, in case of the death of the obligor before a conveyance, to put the rights of all persons claiming under the obligee upon the same footing as if the conveyance had been made in his lifetime, is so clearly expressed in this chapter, that it must be deemed to repeal by implication, to this extent, the technical rule of law that the widow is not entitled to dower in an equitable estate. We are the more inclined to adopt this view, because the rule itself, as already stated, has no just foundation in principle, but rests exclusively upon authority.

We are therefore of opinion that the widow of Reed is rightly made one of the plaintiffs in this action, and entitled to ask that the decree may be so shaped as to secure to her a right to be endowed in the premises which the defendant is bound to convey. *Decree accordingly.*